# THE UNITED STATES DISTRICT COURT
# FOR
# THE NORTHERN DISTRICT OF NEW YORK

---

DAVID PRICE, as a candidate for the position for Albany County
Republican Committeeman from the 14th Ward 6th District, City of Albany,
THE ALBANY COUNTY REPUBLICAN COMMITTEE, MARTHA
MCMAHON AND JAMES THORNTON, Absentee Voters,

Plaintiffs,

- against -                                  Index No. 06-cv-1083


THE NEW YORK STATE BOARD OF ELECTIONS,

Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## FOR
## SUMMARY JUDGMENT

---

Table of Contents

Table of Contents.................................................................................i

Table of Authorities ......................................................... iii

**FACTS**.................................................................................1

    A. General Background of the Organization of Political Parties. .............1
    B. September 12, 2006 primary election and voters who wanted to cast
       absentee ballots but could not. .........................................................2
    C. Procedural History. .............................................................4

**ARGUMENT**. ...................................................................4

**SUMMARY OF ARGUMENT**. .........................................................5

    1. Election Law §7-122 Violates the Equal Protection Clause................6
       A. The classification created by Election Law §7-122 burdens
          the right to vote which is a fundamental right .....................7
       B. Election Law §7-122 does not serve a compelling state
          interest..................................................................9
       C. Even if Election Law §7-122 serves a compelling state
          interest (which it does not), the law is not narrowly tailored
          to serve that interest ..........................................14

    2. 2. Election Law §7-122 Violates the Candidates First Amendment
       Right to Ballot Access ...................................................15

    3. 3. Election Law §7-122 Violates the Republican Committee's First
       Amendment Right to Associate with Absentee voters......................17

**CONCLUSION** ...............................................................18

Table of Authorities

## FEDERAL CASES

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ......................................................... 4, 8, 16

*Burdick v. Takushi,* 504 U.S. 428 (1992) ................................................................... 7, 10

*Bush v. Gore,* 531 U.S. 98 (2000)............................................................................... 8

*California Democratic Party v. Jones*, 530 U.S. 567 (2000) ....................................... 5, 17

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1984)................................... 6

*Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989)............. 6, 17

*FCC v. League of Women Voters,* 468 U.S. 364 (1984) ................................................. 15

*Florida Star v. B.J. F.,* 491 U.S. 524, (1989) ............................................................... 15

*Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457 (1997).................................... 15

*Harper v. Virginia Bd. of Elections,* 383 U.S. 663 (1966) ............................................... 8

*Hoblock v. Albany County Bd. of Elections*, 341 F.Supp.2d 169 (N.D.N.Y., 2004) .......... 8

*Heller v. Doe*, 509 U.S. 312, 319-320 (1993)................................................................. 6

*Kermani v. New York State Bd. of Elections***,** 487 F.Supp.2d 101 (N.D.N.Y., 2006)................................................................................................................................17

*Kramer v. Union Free School Dist. No. 15***,** 395 U.S. 621 (1969).................................. 10

*Lassiter v. Northampton County Board of Elections*, 360 U.S. 45 (1959)......................... 4

*Lerman v. Board of Elections in City of New York*, 232 F.3d 135 (2nd Cir. 2000) 5, 7, 10, 15, 16

*New Orleans v. Dukes*, 427 U.S. 297 (1976).................................................................. 7

*O'Brien v. Skinner*, 414 U.S. 524 (1974)..................................................................... 5, 9

*Railway Express Agency, Inc. v. New York*, 336 U.S. 106 (1949).................................... 7

*Reed v. Reed*, 404 U.S. 71 (1971) ............................................................................... 6

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002)....................................... 5

*Reynolds v. Sims,* 377 U.S. 533 (1964) ................................................................... 5, 8, 10

*Sable Communications of Cal., Inc., v. FCC,* 492 U.S. 115 (1989) ................................ 14

*Settineri v. DiCarlo* 82 N.Y. 2d 813 (1993) ............................................................ 12, 13

*Settineri v. DiCarlo*, 197 A.D.2d 724 (2nd Dept. 1993) ............................................ 12, 13

*Smith v. Allwright*, 321 U.S. 649 (1944) ......................................................................... 5

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986)........................... 6, 17

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1987) ..................................... 17

*Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483 (1955)........................................ 7

*United States v. Classic*, 313 U.S. 299 (1941).................................................................. 5

## FACTS

### A. General background of the organization of political parties.

Article 2 of the Election Law provides the rules for the organization for political parties into committees.  The political committees perform important political tasks.  To make the exercise of this power reflect the desires of the party faithful, the members of political parties elect representatives to the state and county political committees.  These representatives are known as 'Committeemen.'

The Albany County Republican Committee ("Republican Party"), a plaintiff in this action, has chosen for each election district to be represented by two County Committeemen in the County.  *See* Election Law § 2-104 (providing for alternative methods for the selection of the number of committeemen per election district).  The county committeemen are selected biannually in even number years (e.g., 2004, 2006, etc.).  *See* Election Law § 2-106.  County committeemen "shall hold office until the next election at which members of the committee are elected."   Election Law § 2-106(4).  In theory, a committeeman's term runs from the day of the primary election until the day of the primary election two years later.[1]

 If a member of the Republican Party wants to be a committeeman, he or she must circulate a designating petition to have their name placed on the ballot.  If more than two party members submit valid designating petitions, then there must be an election.

---

[1] This is only a theoretical term of office.  A candidate for election is not considered elected until certified by the Board of Elections which can take up to nine days.  Election Law § 9-200(1).  The time it takes the Board of Elections to canvass and to certify before a committee member's term starts plays a pivotal role in the analysis of the constitutional issues at stake.

Contested elections for committee positions are relatively rare, but they do occur. Generally, there are only a few (three or four) primary elections during a cycle.

Competitive elections for committee positions generally are conducted on the first Tuesday after the second Monday in September together with all other party and public office primary elections.  Election Law § 8-100(1)(a).  In 2006, the elections were conducted on lever machines.[2]  In addition, pursuant to Article 8 of the Election Law, certain votes are cast by paper ballot.  Handicap voters, voters whose eligibility to vote is challenged (affidavit ballot), and voters who cast votes when a machine malfunctions (emergency ballot) all vote by paper ballot.  These paper ballots include provisions to vote for all public offices and party positions, including committeemen.

In addition to voting in person, New York allows voters to vote by absentee ballots in primary elections.  Election Law § 7-122(1)(a) provides:

> Ballots for absentee voters shall be, as nearly as practicable, in the same form as those to be voted in the district on election day, if any, except that ballots for primary elections **shall omit** the party position of ward, town, city or county committee … . (emphasis added).

It is this provision that has caused the controversy that triggered this action as described below.

### B.  September 12, 2006 primary election and voters who wanted to cast absentee ballots but could not.

Joseph Sullivan, David Price, and Anthony Gray all filed valid designating petitions for the party position of Albany County Committeeman for the 14th Ward 6th District, City of Albany ("14-6 Committeeman") that was to be voted upon at a primary

---

[2] The Help American Vote Act ("HAVA") requires that the State eliminate the lever voting machines.

election on September 12, 2006.  Because there were three candidates (Sullivan, Price, and Gray) for two positions, a primary election was triggered.

Martha McMahon and James Thornton are members of the Republican Party who reside in 14-6.  They were eligible to vote in the September 2006 Republican primary.  However, prior to the Election Day, they knew they were not going to in Albany County on Election Day.  Both voters submitted an application to vote by absentee ballot instead.  The voters' *main reason* for submitting an absentee ballot application was so that they could vote for the Committeeman positions.

The Board of Elections sent McMahon and Thornton their absentee ballot for the Republican primary election.  There was one problem—the absentee ballots did not include provisions for casting a ballot for the party position of 14-6 Committeeman.

This was not a mistake or oversight, but rather a result dictated by the New York Election law.  Pursuant to the mandate of Election Law § 7-122(1)(a), an absentee ballot could not lawfully include provisions for the voters to cast a ballot for the party position of 14-6 Committeeman.

### C.  Procedural history.

McMahon, Thornton, Price, and the Albany County Republican Party brought this action challenging the constitutionality of Election Law § 7-122(1)(a ).  Plaintiffs' alleged that not allowing absentee voters to vote for 14-6 committee violated the Constitution of the United States.  McMahon and Thornton claimed that § 7-122 violated their right to vote.  Price claimed that § 7-122 violated his right to ballot access.  The Republican Party, on behalf of its members, claimed that § 7-122 violated the party members' right to vote and of association.

3

Plaintiffs moved for a temporary restraining order and a preliminary injunction. The Court issued an injunction ordering that the Albany County Board of Elections provide the voters with an absentee ballot that contained a provision to vote for the party position of Albany County Committeeman in the 14th Ward 6th District City of Albany to Martha McMahon and James Thornton.

The Court further ordered that the Albany County Board of Elections should not tally, canvass, or cast the aforementioned ballots until and unless ordered by this Court. Because the Albany County Board had no interest in defending the constitutionality of the Election Law, the plaintiffs dismissed from the action provided that:

> Defendant County Board shall abide by the terms and provisions of any and all subsequent orders of this Court with respect to the tallying, canvassing, and/or casting of the absentee ballots of the plaintiff-voters and/or with respect to the certification of a winner of the party position of Albany County Committeeman in the 14th Ward, 6th District, City of Albany and further agrees that any such order may be specifically directed to the Albany County Board of Elections as if it were a party.

Plaintiffs now move for summary judgment. Plaintiffs seek to have the Court: (1) declare that New York Election Law § 7-122(1)(a) unconstitutionally restricts Plaintiffs' rights as secured by the First and Fourteenth Amendments to the United States Constitution; (2) order Defendant to notify and inform all the County Boards of Elections in the State of New York that § 7-122(1)(a) has been declared by this Court to be unconstitutional; (3) order Albany County Board of Elections to open, canvass and tally the absentee ballots of plaintiff-voters; (4) grant Plaintiffs' request for costs and attorney's fees, pursuant to 42 U.S.C. § 1988; and (5) grant any other further and different relief that seems to this Court as just and proper.

4

## ARGUMENT

"The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised," *Lassiter v. Northampton County Bd. of Elections*, 360 U.S. 45, 50 (1959). In fact, the Constitution grants the States substantial authority to structure "[t]he Times, Places and Manner of holding Elections." U.S. Const. art. I, § 4, cl. 1. Thus, the Supreme Court has held that "a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion." *California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000). Once a state exercises its authority to provide for elections, it must comport with constitutional requirements and prohibitions of the First and Fourteenth Amendments. *Republican Party of Minnesota v. White*, 536 U.S. 765, 788 (2002). In particular, the right to vote in primaries receives the same constitutional protection as the right to vote in general elections. *Smith v. Allwright*, 321 U.S. 649, 660-662, (1944); *U.S. v. Classic*, 313 U.S. 299, 318, (1941).

## SUMMARY OF ARGUMENT

Plaintiffs make three arguments in support their proposition that Election Law § 7-122 is unconstitutional:

**(1)** Election Law § 7-122 violates plaintiff-voters' rights guaranteed by the Equal Protection Clause because it burdens the fundamental right to vote. *O'Brien v. Skinner*, 414 U.S. 524 (1974); *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983); *Reynolds v. Sims*, 377 U.S. 533, 554 (1964), without being narrowly drawn to advance a state interest of compelling importance. *Lerman v. Board of Elections in City of New York*, 232 F.3d 135, 145 (2d Cir. 2000).

**(2)** Election Law § 7-122 violates plaintiff-candidate's First Amendment right to ballot access. *Id.* at 145.

(3) Election Law § 7-122 violates the Republican Committee's First Amendment right to associate with absentee voters. *Eu v. San Francisco County Democratic Cent. Committee*, 489 U.S. 214 (1989); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986).

**1. Election Law § 7-122 Violates the Equal Protection Clause.**

The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The essence of equal protection is that similarly situated groups are to be treated alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440-41 (1985). When government distinguishes between two similarly-situated groups, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. The government may not distinguish between individuals solely on differences that are irrelevant to a legitimate governmental objective. *Reed v. Reed*, 404 U.S. 71, 75-76 (1971).

The Equal Protection Clause does not deprive government of all power of classification, but does require government to treat alike persons who are similarly situated in absence of sufficient justification for the discriminatory treatment. The amount of justification the government is required to offer to sustain its discriminatory practices depends on the nature of the classification.

A discriminatory law that neither burdens a fundamental right nor targets a suspect class will be upheld so long as it bears a rational relation to some legitimate end. *See*,

*Heller v. Doe*, 509 U.S. 312, 319-320 (1993).  Thus, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group.  *See, e.g., New Orleans v. Dukes*, 427 U.S. 297 (1976) (tourism benefits justified classification favoring pushcart vendors of a certain longevity); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483 (1955) (assumed health concerns justified law favoring optometrists over opticians); *Railway Exp. Agency v. People of the State of N.Y.*, 336 U.S. 106 (1949) (potential traffic hazards justified exemption of vehicles advertising the owners products from general advertising ban).

On the other hand, if a law's classification burdens either a fundamental right or targets a suspect class, then the constitutional bar is raised.  "When state election laws subject speech, association, or the right to vote to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance."  *Lerman*, 232 F.3d at 145 (citing *Burdick v. Takushi,* 504 U.S. 428, 434 (1992)).

With these principles in mind, the plaintiff-voters argue that voting is a fundamental right and that Election Law § 7-122 is not narrowly tailored to serve substantial state interests of compelling importance.

### A. The classification created by Election § 7-122 burdens the right to vote which is a fundamental right.

All equal protection analysis starts with the classification made by a statute.  In this case, Election Law § 7-122 creates a distinction between two different types of voters.  The first class is the class of voters that votes by absentee ballot.  These voters are not given the opportunity to vote for County Committeeman pursuant to Election Law § 7-122.  The absentee voter loses his franchise and ability to elect a county party representative.

The second class of voters are paper voters who show up at the polls to vote but for some reason (e.g., a challenge ballot, an emergency ballot, a provisional ballot, or handicapped ballot) must vote on paper. These paper voters are allowed, and indeed the Board of Elections, is required to provide them, the opportunity to vote for County Committeeman. They are substantially the same ballot as the absentee—the only difference being that these paper ballots contain a provision to vote for County Committeeman.

There is no dispute that Election Law § 7-122 burdens the voters' ability to vote for County Committee member; by the statute's very terms, absentee voters are not allowed to vote for a county committee member. The question is not whether § 7-122 burdens voting, but rather is whether or not voting is a fundamental right.

Voting is a fundamental right. "[It] ranks among our most precious freedoms." *Anderson*, 460 U.S. at 787. "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote…." *Reynolds,* 377 U.S. at 554. The Equal Protection Clause protects the voters against arbitrary and disparate treatment. "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore,* 531 U.S. 98, 105 (2000). *See, e.g., Harper v. Virginia State Bd. of Elections,* 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment").

When the state discriminates between categories of qualified absentee voters, it burdens a fundamental right. In *O'Brien v. Skinner*, the Supreme Court held that a New York Election Law burdened the right to vote because it discriminated between categories of qualified <u>absentee</u> voters—pretrial detainees who resided <u>within</u> the county in which they are detained and pretrial detainees who resided <u>outside</u> the county in which they are detained. Under the New York law, only those detainees who resided outside the county of their detention could vote by absentee ballot. The Supreme Court explained:

> [New York permits] those held in jail awaiting trial in a county other than their residence are also permitted to register by mail and vote by absentee ballot. Yet, persons confined for the same reason in the county of their residence are completely denied the ballot. The New York statutes, as construed, operate as a restriction which is so severe as itself to constitute an unconstitutionally onerous burden on the exercise of the franchise. Appellants and others similarly situated are, as we have noted, under no legal disability impeding their legal right to register or to vote; they are simply not allowed to use the absentee ballot and are denied any alternative means of casting their vote although they are legally qualified to vote.

*O'Brien*, 414 U.S. at 530 (internal citation and quotations omitted).

Election Law § 7-122 discriminates between those paper voters who appear at the polls and those paper voters who leave the county and must vote by absentee ballot. As in *O'Brien*, Election Law § 7-122 "burden[s] the exercise of the franchise"—a fundamental right. Since Election Law § 7-122 burdens a fundamental right, it must be narrowly tailored to serve a substantial state interest.

**B. Election Law § 7-122 does not serve a compelling state interest.**

Since voting is a fundamental right, any the statute that effects that right must survive a close and exacting examination. "When state election laws subject speech, association, or the right to vote to severe restrictions, the regulation must be narrowly

drawn to advance a state interest of compelling importance." *Lerman*, 232 F.3d at 145 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

"This careful examination is necessary because statutes distributing the franchise constitute the foundation of our representative society.  Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." *Kramer v. Union Free School Dist. No. 15,* 395 U.S. 621, 626 (1969).  *See also Reynolds*, 377 U.S. at 562 (holding that "since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized").

The New York State Board of Elections claims that denying primary voters the ability to vote for members of a county committee is justified by the rare circumstances in which a party gets to certify its nominee for office (as opposed to electing them in a primary election).  See transcript of oral argument dated September 11, 2006 at pp. 10-11. The justification boils down to this: it takes too long to count absentee ballots and a delay in counting could theoretically prevent a political party from being able to nominate candidate for a public office that became vacant between July and September.

The exact circumstances under which such a nomination arises involves a number of statutes, but all of the circumstances begin with the premise that sometimes a public office becomes vacant.  When the vacant office is required to be filled at the next general election and the vacancy occurs seven (7) days before the last day for circulating designating petitions (somewhere near the beginning of July), then a political committee decides who will be the party's nominee for the general election.  Election Law § 6-116.

If the vacant office is a statewide office, then the party's state committee makes the nomination.  *Id*.  However, if the vacant office is <u>not</u> a statewide office, then the party's county committee makes the nomination.  *Id*.  Further, if the vacancy occurs between seven (7) days before the last day for circulating designating petitions (somewhere near the beginning of July) but before seven days proceeding a primary election (some where near the beginning of the September),[3] the appropriate political committee must file a certificate of nomination within seven (7) days after the primary election.  Election Law § 6-158(6).

The problem that the Board of Election envisions is that newly elected committee members, if absentee ballots were allowed, would not be certified in time for the committee members to fill a vacancy.  This is because absentee ballots can be received up to 7 days after the primary election under Election Law § 8-412(2).  In other words, if the party had to wait seven days to count the votes and to certify the winner, then the committee could not meet to nominate a candidate for a vacant office within the 7 days as required by Election Law § 6-158(6).

To understand this argument (and its fallacies) requires wading into the thicket of the election law.  The Board argument begins with the theory that a committeeman's term

---

[3] The dates are calculated by references to various parts of the Election Law. Election Law § 6-158(1) requires that "a designating petition shall be filed not earlier than the tenth Monday before, and not later than the ninth Thursday preceding the primary election." The primary date is set by Election Law § 8-100(1)(a) which mandates that  the primary election "shall be held on the first Tuesday after the second Monday in September." Thus, the earliest that the primary election could be held is September 9 and the latest the primary could be held is September 15.  Working backwards, the latest petition can be submitted is July 16 and earliest date for the last day to submit petitions is July 10. Although the Legislature can change the dates of the primary. For example, the Legislature decided to move this year's primary election from September 11 to September 18. *See* Laws of 2007, Chapter 49, § 1 which provides: "Notwithstanding the provisions of paragraph (a) of subdivision 1 of section 8-100 of the election law, the 2007 primary election shall be held on September 18, 2007." Thus, the last day for petitions this year is July 19.

runs from the day of the primary election until the day of the primary election two years later. Election Law § 2-106(4). Thus, on the day after the primary, all former committee members' terms have expired and they can not exercise power and cannot do things like make nominations to vacant offices.[4]

However, the new committee member "is not considered elected until certified by the Board of Elections." *Settineri v. DiCarlo*, 197 A.D.2d 724, 727 (2nd Dept. 1993) (dissenting opinion) *reversed for the reasons stated in the dissent* by 82 N.Y.2d 813 (1993). Certification does not happen instantaneously. Election Law § 9-200(1) provides that the Board of Elections can take up to nine (9) days after a primary election to canvass the vote and certify the winner. Thus, the 7 day delay in waiting for absentee ballots does not delay a certification process that takes up to 9 days.[5] Consequently, the delay caused in canvassing an election by allowing absentee voting is not compelling enough to destroy the fundamental rights of plaintiff-voters.

Moreover, Board's argument is not only flawed on a theoretical basis, but also on a practical basis. A political party that is concerned about not having enough time to nominate a candidate to fill a vacancy after the primary election, can simply nominate a candidate before the election. Since any applicable vacancy will occur at least a week

---

[4] *Cf.* *Hammer v. Curran*, 203 Misc. 417 (Albany County Supreme Court 1952) (Votes attempted to be cast at county committee meeting by committeemen whose terms, according to rules of committee, had expired, but who had not been replaced, were valid under § 12 of the former Election Law of 1949 and such committeemen should hold office until election of their successors, even if law were in conflict with committee rule.)

[5] This process can be further delayed three (3) days by objections to paper ballot used at the polling place. Election law § 9-209.

before the primary election,[6] the committee can meet before the primary to nominate a candidate to for the vacancy and avoid the issue of certification of newly elected committeemen altogether.   In other words, nothing in the law requires a political committee to wait until after the primary election to nominate a candidate for a vacant office.   The Election Law § 6-158(6) only sets as a deadline date of seven days after elections for the committee to make the nomination.  Given that, there is a practical way to avoid the dilemma that the Board envisions—their justification for violating the plaintiff-voters' fundamental right to vote is not compelling.

Finally, in those cases where the committee cannot meet to nominate a candidate to fill a vacancy until after the primary elections, the Court of Appeals allows the old party leadership to act to fill the vacancy.   In *Settineri v. DiCarlo*, 82 N.Y. 2d 813 (1993) *reversed for the reasons stated in the dissent* in 197 A.D.2d 724 (2nd Dept. 1993), the Court held that where:

> The organizational meeting could not be held until the votes were canvassed and the results of the primary election certified, and canvassing can take up to nine days. In this case the committeepersons were certified by the Board of Elections eight days after the primary, one day after the deadline to nominate. Therefore, the newly elected county committee did not have the opportunity to elect a new chairperson prior to the expiration of the seven-day period for filing a certificate of nomination for the Senate vacancy.  Since it was effectively impossible to canvass and certify the newly elected committee members, convene an organizational meeting, elect a chairperson, and file a proper certificate of nomination, all within seven days of the primary, the outgoing chairperson was obliged to act for the party because the failure to file a nomination by September 21st would have been fatal to its ability to field any candidate for the vacant Senate seat.

197 A.D.2d at 727-28.

---

[6] *See supra* n. 4 and accompanying text (recall that the latest possible date for the applicable vacancy to occur is 7 days <u>prior to</u> the primary election).

13

Since the Court of Appeals has provided a solution to any delay in the certification process caused by the use of absentee ballots (which is not any), the justification of delay is not a compelling enough justification to abridge the plaintiff-voters fundamental right to vote for a member of the county committee.  Therefore, plaintiff-voters' request that the Court grant their motion for summary judgment.

### C. Even if Election Law § 7-122 serves a compelling state interest (which it does not), the law is not narrowly tailored to serve that interest.

Even assuming that the delay is a sufficient state interest in prohibiting voters from casting absentee ballots for members of the county committee (which it is not), Election Law § 7-122 must be narrowly tailored to serve the state's interest.  "It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends." *Sable Communications of California, Inc., v. F.C.C.,* 492 U.S. 115, 126 (1989).

The tailoring question is not whether the Election Law § 7-122 serves the interest of allowing a party to make a timely nomination to fill a vacancy.  Rather the question *is* whether § 7-122 is *narrowly tailored* to serve the interest.  It is not—Election Law § 7-122 is under inclusive because its applies only to county committee elections and not state committee elections.

Election § 7-122 permits voters to vote by absentee ballot for state committee members, but not for county committee members.  The state committee faces the same deadline pressure to nominate candidates for vacancies as the county committee.  *See* Election Law § 6-116 and § 6-158(6) (requiring the state committee to nominate candidates to fill vacancies in state–wide offices within a week after the primary election). This makes no sense if the State's interest is to ensure that a party has sufficient time to

nominate a candidate for a vacant office.  It would seem that New York has the same interest in making sure that state wide public offices are timely filled as local offices.  That is, the State should have the identical, if not greater, interest in making a sure a political party can fill a vacant nomination for a state office like Governor as it does in making a sure a political party can fill a vacant nomination for a local office like County Clerk.

The Supreme Court has looked skeptically on statutes that are underinclusive "because underinclusivess of a regulatory scheme chosen by the government may well suggest that the asserted interests either are not pressing." *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 493 (1997).  *See* also *The Florida Star v. B.J.F.*, 491 U.S. 524, 540 (1989) (noting that "the facial underinclusiveness of a regulation of speech raises serious doubts about whether [a state] is, in fact, serving, with this statute, the significant interests which [it] invokes … ."); *F.C.C. v. League of Women Voters of California*, 468 U.S. 364, 396 (1984) ("patent…underinclusiveness…undermines the likelihood of a genuine [governmental] interest"). By limiting the reach of the absentee voting ban to only the office of members of the county committees but not members of state committees, Election Law § 7-122 is rendered as not sufficiently tailored to justify abridging the fundamental right of voting.   Therefore, Election Law § 7-122 violates the Equal Protection Clause and plaintiff-voters are entitled to summary judgment.

## 2. Election Law § 7-122 Violates the Candidate's First Amendment Right to Ballot Access.

The First Amendment guarantees a candidate access to the ballot.  *Lerman*, 232 F.3d at 145-46.  The Supreme Court has identified ballot access in the First Amendment "right of individuals to associate for the advancement of political beliefs … ."  *Anderson*, 460 U.S. at 787 (internal quotations and citations omitted).   The most effective and

15

meaningful way that candidates can get voters to associate with them is by being on the ballot and have them cast a vote. To do that, of course, the candidate must be on the ballot. The Second Circuit established the framework to deal with ballot access questions:

> Ordinarily, policing this distinction between legitimate ballot access regulations and improper restrictions on interactive political speech does not lend itself to a bright line or litmus-paper test, but instead requires a particularized assessment of the nature of the restriction and the degree to which it burdens those who challenge it. However, in those cases in which the regulation clearly and directly restricts core political speech, as opposed to the mechanics of the electoral process, it may make little difference whether we determine burden first, since restrictions on core political speech so plainly impose a severe burden that application of strict scrutiny clearly will be necessary.

*Lerman*, 232 F.3d at 145-46 (internal citations and quotations omitted).

In this case, the plaintiff-candidate (Price) was completely denied access to the absentee ballot. Whichever standard the Court employs, the denial of a candidate to absentee voters violates the First Amendment. There are approximately 27 Republican voters in 14th Ward 6th District. The absentee voters represent a significant expression of the will of the people. Candidate Price should not be denied access to them absent a compelling reason.

For the reasons set forth above at pp. 6 to 15, the Board of Elections does not have a compelling interest in denying the plaintiff-candidate access to absentee ballots. Therefore, plaintiff-candidate requests that the Court grant his motion for summary judgment.

### 3. Election law § 7-122 Violates the Republican Committee's First Amendment Right to Associate with Absentee voters.

"Political parties are a vital fabric of our democracy and have a fundamental right to choose and support candidates they believe best represent their political views and

agenda." *Kermani v. New York State Bd. of Elections***,** 487 F.Supp.2d 101, 114 (N.D.N.Y., 2006). Thus, the First Amendment protects a political party's right to determine the structure and content of its own association. *See, e.g.*, *Eu*, 489 U.S. at 216 (holding that a state may not prohibit parties from endorsing candidates in primary election or "dictate the [party's] organization and composition" except as necessary to serve a compelling state interest); *Tashjian*, 479 U.S. at 224 (noting that the First Amendment protects a party's "determination of the boundaries of its own association, and of the structure which best allows it to pursue its goals").

The Supreme Court has "continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution." *California Democratic Party v. Jones*, 530 U.S. 567, 573 (2000). Unsurprisingly, "the law vigorously affirms the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party "select[s] a standard bearer who best represents the party's ideologies and preferences." *Eu*, 489 U.S. at 224. The moment of choosing the party's nominee is "the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Tashjian*, 479 U.S. at 216; *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997) ("[T]he standard bearer" (internal quotation marks omitted))" *Id.* at 371, (STEVENS, J., dissenting) ("The members of a recognized political party unquestionably have a constitutional right to select their nominees for public office").

Here the State of New York, as it is entitled to do, requires that the Republican Committee select its members by a primary election. Further, the State gives the voters the right to vote by absentee ballot. As described, there is one caveat — an absentee voter

cannot vote for the party office of member of the county committee.  This abridges the association between voter and party.  The Republican Party wants its party members to be able to vote by absentee ballot.  The Party has a right to maximize the participation of its members in a primary election and absent a strong justification, the State cannot abridge this right.

Again, New York lacks the appropriate justification for the violation of the Party's right to associate with its voters for the reasons set forth above under at pp. 6 to 15.  Therefore, plaintiff-candidate requests that the Court grant his motion for summary judgment.

## CONCLUSION

For the above reasons and for any others that seem wise and just to the Court, plaintiff-voters, plaintiff-candidate, and request that the Court grant their motion for summary judgment.

Dated: July 13, 2007

/s TOM MARCELLE
Tom Marcelle, Esq.
Bar Roll No. 102117
Counsel for Plaintiffs
2 E-Comm Square, 3rd Floor
Albany, New York 12207
Phone: (518) 427-1720